UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 21-164 (NEB/BRT) |
| Plaintiff, | |
| v. | |
| Samson Diamonte Xavior-Smith, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Benjamin Bejar, Esq., United States Attorney's Office, counsel for Plaintiff.

Steven J. Wright, Esq., Law Office of Steven J. Wright, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

On July 29, 2021, Defendant Samson Diamonte Xavior-Smith was indicted on one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). (Doc. No. 1.) This case is before the Court on Defendant's Motion to Suppress Evidence Obtained in Violation of the Fourth Amendment. (Doc. No. 21.) The matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. The Court held a motion hearing on September 24, 2021, and seven exhibits—including the search warrants at issue—were received into evidence. (*See* Doc. Nos. 31, 36.) For the reasons stated below, this Court recommends that Defendant's motion be denied.

## BACKGROUND

On January 1, 2021, St. Paul police officer Mitchell Rhiel obtained a warrant to search the following described premises: "[XXXX] Magnolia Ave #2, St. Paul, MN 55106. This is a multi-unit apartment complex with a brick base and is dark brown and light tan in color. The complex is located in the County of Ramsey." (*See* Doc. No. 31, 9/24/21 Hr'g Ex. List, Hr'g Ex. 1.) The warrant allowed for a search for the following property and things:

- Papers, mail, writings, letters, and forms of identification for SAMSON SMITH (DOB . . . ).

- Safes, lockboxes, and their keys. Weapons, guns, firearms, ammunitions and other dangerous weapons described in Minnesota Statute 609.02.

- Black and gray Glock firearm

- One blue sweatshirt SMITH was seen wearing at the time of the incident.

(Hr'g Ex. 1.)

The facts that Officer Rhiel stated in his affidavit in support of the issuance of the warrant were as follows:

> On 11/10/20, a Minnesota Department of Corrections body only warrant was issued for SAMSON DIAMONTE-XAVIER SMITH (DOB . . . ) for the following offense: Offender Release Violation/Body Only/Felony.
>
> During the month of December, 2020, ATF Task Force officer T. Diaz obtained a phone number believed to belong to SMITH. A pen register, trap and trace device, electronic tracking device GPS warrant was authored. The Honorable Ramsey County Judge Warner later reviewed and signed the warrant.
>
> Upon receiving the signed warrant, it was submitted [f]or processing to T. Mobile, Inc. Officers from the St. Paul Police Department Gun & Gang

unit, along with agents from the ATF and Department of Correction Fugitive Task Force officer Troy Levander began receiving electronic data and quickly learned that the electronic device was consistently pinging within the area [o]f Mechanic Ave and Ames St in St. Paul.

On 12/21/20, TFO Levander contacted the agents from the MN Bureau of Criminal Apprehension who responded to the area and assisted with determining the location of the electronic device. Agents were able to determine the electronic device was inside the address of [XXXX] Magnolia Ave. After determining the devices locations, agents conducted surveillance on the address on multiple occasions but were unable to locate SMITH.

Near and around the date of December 21, 2020, St. Paul Police Department Gun & Gang unit officer I. Palmer was able to identify a female subject who was known to associate with SMITH. Officer Palmer identified the female subject as: [K.C.C.] (DOB . . . ). [K.C.C.] had a current address of [XXXX] Magnolia Ave #2, St. Paul, MN 55106.

On 01/01/20 at approximately 2041hrs, officers from the St. Paul Police Department Eastern District were dispatched to the address of [XXXX] Magnolia Ave E. in response to a weapons complaint. Information provided to dispatch revealed that a male subject identified as SMITH was seen in possession of a black firearm, possibly a Glock. The firearm was described as having a black bottom and a gray top. Further information indicated that SMITH was seen running back inside [XXXX] Magnolia Ave with the firearm. SMITH was described as wearing a black sweater with gray sweatpants and standing approximately 5'8 inches tall with a thin build.

Squads arrived on-scene and approached the apartment building. Officers Rhiel and Carrion approached the ground level window leading to apartment #2 and observed a male subject inside the apartment who matched the description provided for SMITH. Contact was attempted at the front door of the unit, but all the apartment lights were quickly extinguished, and several subjects were heard inside the apartment, but nobody answered the door.

Officers on-scene were able to speak with [K.C.C.] by phone and she later exited the apartment with a child. A male inside the address then closed the door and refused to exit the apartment. St. Paul Police Department officer D. Quast responded to the scene and began communicating with the male believed to be SMITH. SMITH eventually exited the apartment and was taken into custody for his active Department of Corrections warrant. A

> security sweep of the apartment was conducted, and several additional subjects were located inside. Once the apartment was cleared, officers remained on-scene and secured the apartment for a pending search warrant.
>
> From previous contacts, your affiant is familiar with SMITH and his previous criminal history. SMITH has the following criminal convictions which prevent him from possession [of] any firearms and or ammunition: Possess Pistol/Assault Weapon Conviction or Adjudicated Delinquent for Crime of Violence 05/2014; Assault 3rd Degree 10/2019; Domestic Assault/Felony 10/2019.

(Hr'g Ex. 1.)

The search warrant issued and was executed on January 1, 2021. (*Id.*) On January 2, 2021, St. Paul police officer Tina Kill obtained a warrant to search Samson Diamonte-Xavier Smith through a "Buccal (oral) DNA swab." (Hr'g Ex. 2.) To support probable cause for the issuance of this warrant, Officer Kill stated the following in her application:

> On 01/01/2021 at 2041hours [S]aint Paul Police officers were dispatched to the address of [XXXX] Magnolia Ave E. #2 for a report of a weapons complaint (SPPD CN 21000472). The complainant reported that she got into an altercation with another female at the address, and the female's boyfriend Samson SMITH pointed a handgun at . . . her causing her to fear for her safety. She described the firearm as a grey and black semi-automatic handgun. SMITH also had a confirmed Department of Corrections Warrant for a weapons violation.
>
> After a short standoff, made contact with the occupants of the apartment, including SMITH, and wrote a search warrant to recover firearms and other property. Officers located a black and gray in Springfield model XD, .45caliber firearm with SN#XD714395 wrapped in a blanket in a bedroom. The firearm was reported stolen out of Minneapolis, MN. Officers located ammunition and suspected narcotics as well. SMITH is prohibited from possessing firearms due to disqualifying crimes of violence. SMITH was arrested for the warrant and is in custody at the Law Enforcement Center.
>
> Based upon the above listed facts, your affiant is requesting authorization to obtain a Buccal Sample of SMITH's saliva in which your affiant, and

4

others under her direction including Ramsey County Correctional Officers, would use whatever force is reasonable and necessary to obtain SMITH's DNA. If DNA is present on the firearm it will be compared to SMITH's DNA to determine if he was in possession of the firearm.

(Hr'g Ex. 2.) This search warrant was executed, and the buccal swab of Smith's DNA was obtained, on January 2, 2021. (*Id.*)

At the hearing on this matter, Sergeant Tim Moore from the St. Paul Police Department testified. He stated that he submitted the DNA sample collected from Smith on January 2, 2021, to the BCA for forensic examination and testing in comparison to DNA samples collected from the firearm and narcotics that were seized from the Magnolia Avenue apartment. (Doc. No. 37, 9/24/21 Hr'g Tr. 12–14; *see also* Hr'g Exs. 3, 4.) He testified that the swabs collected from the firearm and the narcotics packaging came back indicating that the were not suitable to be compared to anyone. (9/24/21 Hr'g Tr. 15.) At that time, however, the BCA did develop a DNA profile report from the swab taken from Smith. (*Id.*)

Sergeant Moore also testified about another incident involving Smith that occurred on June 25, 2021. (*Id.* at 15–16.) On that day, police received a 911 call from someone reporting that they observed a man point a gun at a female driver on the Robert Street bridge. Officers encountered the suspect—Mr. Smith—at which time Smith fled from the officers on foot. (*Id.* at 16.) During the foot chase, Smith discarded an item—later determined to be a firearm—into a garbage can within view of the officers. (*Id.*) After a short foot chase, Smith was captured by police and the firearm was recovered from the garbage can. (*Id.* at 16–17.) Police then submitted DNA swabs from the firearm

5

recovered on June 25, 2021, to the BCA for forensic DNA profiling comparison to Smith's DNA profile that was already on file with the BCA from the January 2, 2021 search. (*Id.* at 17; *see also* Hr'g Ex. 5.) The police did not obtain another warrant to request this DNA comparison; Sergeant Moore testified that they do not seek a warrant in such circumstances when there is already a known DNA sample on record at the BCA from their suspect. (9/24/21 Hr'g Tr. 18–19.) The BCA comparison results showed that Smith's DNA matched the DNA recovered from the firearm found on June 25, 2021. (*Id.* at 19; *see also* Hr'g Ex. 6.)

On July 29, 2021, Defendant Samson Diamonte Xavior-Smith was indicted on one count of felon in possession of a firearm. (Doc. No. 1.)

## DISCUSSION

Defendant argues that the search warrant application for the apartment on Magnolia Avenue in St. Paul failed to describe a nexus between the alleged criminal activity (i.e., illegal possession of a firearm) and the apartment, and therefore it lacked probable cause as required by the Fourth Amendment. Defendant also argues that the Court should suppress the evidence received from the subsequent buccal swab seizure, DNA testing, and comparison because that search is fruit of the poisonous tree since the buccal swab search warrant was based on the information learned from the Magnolia Avenue apartment search. In addition, Defendant argues that even if the buccal swab search and seizure evidence is not suppressed as poisonous fruit, the later comparative evidence should nonetheless be suppressed because the comparison of his DNA to the DNA retrieved from evidence in June was an unlawful warrantless search.

6

I.     **Magnolia Avenue Apartment Search Warrant**

The Fourth Amendment requires probable cause to be shown before a search warrant is authorized. U.S. Const. amend. IV; *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). In determining whether probable cause exists, a detached and neutral judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) ("The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.") (quotations omitted). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Courts should not review search warrants in a hyper-technical fashion. *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006).

"When . . . the issuing court relies solely on an affidavit to determine whether probable cause exi[sts], only the information found within the four corners of the affidavit may be considered." *United States v. Wells*, 347 F.3d 280, 286 (8th Cir. 2003) (quotations omitted). In reviewing the decision of the issuing court, this Court must ensure that the court "'had a substantial basis for . . . conclud[ing] that probable cause exist[s].'" *United States v. Oropesa*, 316 F.3d 762, 767 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238–39). Because reasonable minds may differ on whether a particular

search-warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference. *United States v. Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

Here, the application for the Magnolia Avenue apartment search warrant included information linking Defendant Smith to the criminal activity—illegal possession of a firearm—and linking both Smith and his possession of a firearm to the Magnolia Avenue apartment. This information included information provided by a person who called police (stating that Smith was at the Magnolia Avenue apartment with a firearm), information learned through officer investigation (that Smith had a felony warrant issued for his arrest and that it was therefore illegal for him to possess firearms, that the cell phone believed to be Smith's had been pinging inside the Magnolia Avenue apartment), and information observed by officers (that a person matching Smith's description was observed inside of the apartment when officers responded to the scene at the apartment after the weapons complaint call was made, that the people in the apartment refused to exit when asked by the police but instead shut off the lights, and that the person matching Smith's description only finally exited the apartment after further communication with police). These facts, taken together, indicate a fair probability that evidence of Defendant Smith's illegal possession of a firearm would be found in the Magnolia Avenue apartment.[1] *See District*

---

[1] This Court notes that these facts also set this case apart from the situation in *Florida v. J.L.*, 529 U.S. 266 (2000), a case cited by Defendant. In *J.L.*, the only information the officers had was information provided by an anonymous tip, and the anonymous caller had only told police "that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *Id.* at 268.

*of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) ("Because probable cause deals with probabilities and depends on the totality of the circumstances, . . . it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules. It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.") (quotations and citation omitted). Therefore, this Court concludes that the supporting affidavit for the search of the Magnolia Avenue apartment does provide a proper nexus and sufficient probable cause for the search and seizure.

Defendant argues that the search warrant application did not provide credible information showing a nexus between the illegal activity and the apartment because the search warrant application relied upon the weapons complaint call made to dispatch. In particular, Defendant argues that because the application lacked information identifying the weapons complaint caller, the information provided by the caller cannot be considered credible.

Simply because the affidavit did not provide more specific facts explaining who the caller was or the basis for the caller's knowledge regarding Defendant's possession of a firearm, does not mean that the warrant was not supported by the necessary probable cause. *See Technical Ordnance, Inc. v. United States*, 244 F.3d 641, 649 (8th Cir. 2001) ("A law enforcement official is not required to include everything he knows about a subject in his affidavit, whether it is material to a finding of probable cause or not.").[2]

---

[2] In fact, the affidavit for the buccal swab further explains that the person who relayed the information to dispatch was someone who was present at the Magnolia Avenue apartment and was involved in the altercation that involved Smith possessing the firearm: "The complainant reported that she got into an altercation with another female at

9

"[A]n Affidavit supported by information supplied by [an informant] supplies probable cause as long as that information is reasonably determined to be reliable, which requires corroboration by independent evidence." *United States v. Rekonen*, No. 07-123 (JNE/RLE), 2007 WL 2973840, at *12 (D. Minn. Oct. 9, 2007), *aff'd in part, rev'd in part sub nom. United States v. Carlson*, 613 F.3d 813 (8th Cir. 2010), *cert. denied*, 131 S. Ct. 1058 (2011). The Eighth Circuit has explained as follows:

> When a confidential informant provides information in support of a search warrant, the issuing magistrate considers the informant's reliability and the basis of his knowledge. *Gates*, 462 U.S. at 233, 103 S.Ct. 2317. The totality of the circumstances analysis, however, does not mandate that both factors be present before a warrant may issue. Instead, a strong showing of one may compensate for a deficiency in the other. *Id.* For example, if an "informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause . . . ." *Id.; see also United States v. Anderson*, 933 F.2d 612, 615 (8th Cir. 1991). The information from a CRI is sufficiently reliable if it is corroborated by other evidence, or if the informant has a history of providing reliable information. *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993).

*United States v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004).

Here, the caller provided descriptive information regarding both Defendant and the gun that he was holding, as well as predictive information indicating that Defendant would be found at the apartment because he was seen running back inside there. "The information was specific rather than generic and therefore unlikely available to someone

---

the address, and the female's boyfriend Samson SMITH pointed a handgun at . . . her causing her to fear for her safety." (Hr'g Ex. 2.) And the statements in the affidavits indicate when read in context, contrary to Defendant's argument, that the information was relayed contemporaneous with when the event occurred.

without reliable insight into [Defendant's] activities." *United States v. Harry*, 930 F.3d 1000, 1006 (8th Cir. 2019). Also, some of the information provided by the caller was corroborated: the description of the Defendant matched Defendant's appearance, Defendant was observed by police at the place where the caller stated he was, and the apartment building where the caller stated Defendant would be found matched the place where police had tracked the Defendant's cell phone a few days prior. *See United States v. Murphy*, 69 F.3d 237, 239–40 (8th Cir. 1995) (finding sufficient corroboration where the deputy verified the defendant had been released from prison as the informant had stated and was living at the address provided by the informant). "Even the corroboration of minor, innocent details" can be enough to support a finding of probable cause. *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001) (quotations omitted).[3]

Then, in addition to the corroborated details, the Defendant's and the other occupant's actions when the officers arrived proved suspicious (i.e., turning the lights out when the officers called for them, and not exiting the home when asked), further supporting that there was a fair probability that contraband or evidence of a crime would

---

[3] This Court notes that the officers were justified in responding to the apartment based on the call made to dispatch because the information given by the caller provided "reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Green*, 691 F.3d 960, 963 (8th Cir. 2012) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)); *see also United States v. Lopez-Tubac*, 943 F.3d 1156, 1159 (8th Cir. 2019) ("Reasonable suspicion exists when an officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." (citing *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014))); *United States v. Williams*, No. 19-cr-325 (MJD/TNL), 2020 WL 4228095, at *5–6 (D. Minn. May 13, 2020) (finding reasonable suspicion to arrest defendant based on information provided from a 911 caller's tip).

be found in the apartment. "Probable cause 'is not a high bar.'" *Wesby*, 138 S. Ct. at 586 (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). Considering the totality of these facts together, including the information provided by the caller, this Court concludes that the information provided in the affidavit established probable cause to believe that there was a fair probability evidence of the crime (illegal possession of firearms) would be found in the Magnolia Avenue apartment.

     Finally, even if probable cause did not exist (which this Court does not find), this was a facially valid warrant, and therefore the good-faith exception to the exclusionary rule, established in *United States v. Leon*, 468 U.S. 897 (1984), would have to be considered. "Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (citing *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *Proell*, 485 F.3d at 430 (alteration in original) (quotations omitted). "When assessing the objective [reasonableness] of police officers executing a warrant, [the Court] must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Id.* at 431 (alteration in original) (quotations omitted).

     Defendant argues that "[t]he warrant here is not entitled to the general presumption of good faith because the lack of any information regarding the source of

information was so apparent that it would have been obvious to any reasonable officer." (Doc. No. 38, Def.'s Mem. in Supp. of Mot. to Suppress Evidence ("Def.'s Mem.") 6.) However, as explained above, some of the information provided by the caller was corroborated, indicating its reliability. Thus, this Court concludes that the good-faith exception would apply to the search warrant for the apartment. There is no evidence to suggest that the officers' reliance on the warrant was not in good faith, nor is there evidence that the officers' reliance was not reasonable.

For these reasons, this Court concludes that the evidence seized from the Magnolia Avenue apartment should not be suppressed and Defendant's motion should be denied.

## II.   Buccal Swab Search Warrant

As referenced above, St. Paul police officer Tina Kill obtained a warrant on January 2, 2021, to search Defendant Smith through a "Buccal (oral) DNA swab." (Hr'g Ex. 2.) The purpose of that warrant was to obtain Smith's DNA so that it could be compared to the contraband found in the Magnolia Avenue apartment.

Defendant argues that "[w]ithout the evidence uncovered during the illegal search of the apartment, there would have been no warrant to obtain a DNA swab from Mr. Smith," and "[b]ecause that DNA swab and the subsequent DNA profiling and comparison were fruit of the original illegality, they are also subject to suppression." (Def.'s Mem. 8.) As explained above, this Court finds that the search warrant for the apartment was supported by probable cause. Because there was no constitutional

violation relating to the apartment search warrant, Defendant's fruit-of-the-poisonous-tree argument fails.[4]

### III.   DNA Comparison Between DNA Profile on File and Firearm

Finally, Defendant argues that a warrant was required for the DNA comparison documented in Hearing Exhibit 6, which was the comparison of Defendant Smith's DNA on file with the BCA with the firearm recovered in June. Defendant's argument is based on the fact that the January warrant used to obtain the sample of Defendant's DNA was issued to compare it against samples taken from contraband found in the Magnolia Avenue apartment, not for comparison to any further future found evidence. Defendant argues that "the degree of information potentially exposed [from a DNA test], and the sensitivity of that information, requires greater caution [than testing blood for alcohol as was done in *Schmerber v. California*, 384 U.S. 757 (1966)]." (Def.'s Mem. 12.) Defendant, however, also "concedes, as he must, that no precedent stands clearly for the proposition that the government was required to obtain a warrant before comparing Mr. Smith's profile against recovered samples." (*Id.* at 13.)

Defendant's argument that another search warrant was required to run the comparison between a DNA profile report on record (which is used solely for identification) and evidence seized is not supported. "[A]nalyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking

---

[4]  Although Defendant does not otherwise challenge the buccal swab warrant, this Court has reviewed the warrant and finds that the affidavit provided sufficient probable cause for its issuance, similar to that found above with the apartment warrant. In addition, the *Leon* exception would likewise apply to the buccal swab warrant.

procedure that is reasonable under the Fourth Amendment." *Maryland v. King*, 569 U.S. 435, 466 (2013). Here, as stated above, a valid search warrant was obtained to seize the buccal swab from Defendant. As explained at the hearing, the DNA profile that resulted was placed into a .pdf report (*see* Hr'g Ex. 7), and that report was later compared to the newly developed DNA profiles from the newly discovered evidence. No new testing or analysis was performed on the previously obtained DNA sample from Defendant. (Hr'g Tr. 28–30, 32–33, 35–36.) "Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information." *United States v. Jacobsen*, 466 U.S. 109, 117 (1984) (holding that there was no "search" for government to reexamine contents of a package already legitimately opened and partially repackaged, because "[t]he Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated"). Because there was no additional intrusion on Defendant's legitimate expectation of privacy by looking at and comparing the old data in the file with the new data, there was no additional search being conducted that would have required a search warrant pursuant to the Fourth Amendment. *See United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 87 (2d Cir. 2002) (stating that because "'no additional invasion of [claimant's] privacy interest' occurred . . . there was no additional 'search' for purposes of the Fourth Amendment") (citing *Arizona v. Hicks*, 480 U.S. 321,

325 (1987)).[5] Thus, Defendant's argument fails, and the comparative evidence should not be suppressed.

## RECOMMENDATION

Based on the file, record, and proceedings herein, and for the reasons stated above,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence Obtained in Violation of the Fourth Amendment (Doc. No. 21) be **DENIED**.

Date:  December 8, 2021

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b), any party may file and serve specific written objections to this Report and Recommendation by **December 22, 2021**. A party may respond to those objections by **January 5, 2022**. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 7 days from the date of its filing. If timely objections are filed, this Report will be considered under advisement from the earlier of: (1) 7 days after the objections are filed; or (2) from the date a timely response is filed.

---

[5] Furthermore, as the Government points out, the comparison evidence need not be suppressed because Defendant's DNA profile would have been inevitably discovered. (9/24/21 Hr'g Tr. 18–19 (testifying that if the Defendant did not have a DNA profile already on file with the BCA in June, the police would have obtained a DNA warrant and obtained the Defendant's DNA sample at that time)); *see United States v. Welch*, No. 17-cr-251 (ADM/HB), 2018 WL 740388, at *5 (D. Minn. Feb. 7, 2018) (concluding that because the defendant's DNA sample inevitably would have been discovered, it need not be suppressed), *aff'd*, 951 F.3d 901 (8th Cir. 2020).